IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3079-FL

| | | |
|---|---|---|
| WILLIAM C. CARAWAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOHN MCLARTY, RONALD MAYES, | ) | |
| C/O SLEDGE, NATHANIAL | ) | |
| BUCHANAN, C/O DEMBOWSKI, C/O | ) | |
| ALSTON, MR. MOBLEY, DAVID | ) | |
| MINTZER, SERGEANT HARRIS, | ) | |
| SERGEANT GARDNER, PATRICIA | ) | |
| ALSTON, OFFICER GILL, JEFFREY | ) | |
| HARGROVE, OFFICER JONES, | ) | |
| OFFICER LYNCH, OFFICER | ) | |
| MOSELEY, and OFFICER | ) | |
| SHANKWEILER, | ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on defendants' motion for summary judgment (DE 99). Also

before the court is plaintiff's motion to strike evidence from defendants' statement of material facts

(DE 108). Plaintiff responded to defendants' motion, but defendants did not respond to plaintiff's

motion. In this posture, the issues raised are ripe for adjudication. For the following reasons, the

court denies plaintiff's motion to strike and grants defendants' motion for summary judgment.

## STATEMENT OF THE CASE

Plaintiff, a state inmate, brought this civil rights action, *pro se*, pursuant to 42 U.S.C. § 1983.

After filing his complaint, plaintiff filed a motion to consolidate the instant action with an action he

previously filed in Carawan v. Kornegay, No. 5:13-CT-3244-F (E.D.N.C. 2014) ("Carawan I").

Plaintiff then filed four motions to amend his complaint. On September 2, 2014, the court granted plaintiff's first motion to amend as a matter of course, but denied plaintiff's remaining motions to amend as futile because the court directed plaintiff to particularize his complaint. The court also denied plaintiff's motion for joinder. Plaintiff next filed a motion to have the documents he filed in Carawan I "merged" into this action, which the court denied.

On October 6, 2014, plaintiff submitted a 69-page amended complaint in response to the court's September 2, 2014, order. The court then entered an order on November 7, 2014, finding that plaintiff's October 6, 2014, amended complaint violated Federal Rule of Civil Procedure 8, and again directed plaintiff to file one amended complaint. The court notified plaintiff that his amended pleading would be construed as the complaint in its entirety. Plaintiff then filed a motion to appoint counsel, which the court denied, as well as a motion for access to a photocopier and motion for a temporary restraining order.

In the interim, plaintiff filed an amended complaint on January 12, 2015, naming John McLarty ("McLarty"), Ronald Mayes ("Mayes"), Warren Mailroom Processing Assistant Nathanial Buchanan ("Buchanan"), Warren Assistant Superintendent of Programs Mobley ("Mobley"), Patricia Alston ("Alston"), Sergeant Gardner ("Gardner"), Sergeant Harris ("Harris"), David Mintzer ("Mintzer"), Correctional Officer Alston ("Alston"), Correctional Officer Dembowski ("Dembowski"), Correctional Officer Gill ("Gill"), Jeffrey Hargrove ("Hargrove"), Correctional Officer Jones ("Jones"), Correctional Officer Lynch ("Lynch"), Correctional Officer Moseley ("Moseley"), Correctional Officer Shankweiler ("Shankweiler"), and Correctional Officer Sledge ("Sledge") as defendants. Plaintiff alleged that defendants interfered with his mail in violation of the First, Eighth, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2

Plaintiff also alleged that defendants violated his rights pursuant to the Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq.* and the Free Exercise Clause of the First Amendment to the United States Constitution. Finally, plaintiff alleged that defendants violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment in the course of several mail-related disciplinary proceedings and engaged in a conspiracy in violation of 42 U.S.C. § 1985. On January 22, 2015, the court denied plaintiff's pending motions and allowed plaintiff to proceed with this action against defendants McLarty, Mayes, Buchanan, Mobley, Alston, Gardner, Harris, Mintzer, Alston, Dembowski, Gill, Hargrove, Jones, Lynch, Moselely, Shankweiler, and Sledge.

On May 6, 2015, plaintiff filed a motion asking for clarification as to the identity of the party plaintiff designated as "Officer Hargrove" because the North Carolina Attorney General executed a waiver of service for an officer by the name of Barbara Hargrove, which plaintiff believed was the incorrect officer. After the court directed the attorney general to respond to plaintiff's motion, the attorney general notified the court that the correct name for the party at issue was Jeffrey Hargrove. The court then granted the attorney general permission to file a waiver of service on behalf of Jeffrey Hargrove, struck the waiver of service filed on behalf of Barbara Hargrove, and dismissed Barbara Hargrove from this action. Plaintiff subsequently filed a "Motion to Have Documents From Another Case Merged to the Case File of This Case," motion for return of original documents, and a motion for an extension of time to respond to defendants' answer. On August 12, 2015, the court granted plaintiff's motion for the return of original documents and denied plaintiff's remaining motions.

On August 21, 2015, plaintiff filed a motion to appoint counsel, which the court denied the same day. Plaintiff then filed a "Motion to have copies of exhibits returned in order to prepare a

3

motion for summary judgment" and motion for reconsideration of the court's August 21, 2015, order denying plaintiff's motion for appointment of counsel. The court thereafter granted plaintiff's motion to have copies of his exhibits returned, but denied plaintiff's motion for reconsideration. On October 22, 2015, plaintiff filed a motion for an extension of time to carry out discovery, which the court granted in part and denied in part.[1] Plaintiff then filed a motion to expand the number of interrogatories, two motions to have his original documents returned, a motion for leave to file his "Affidavit of Evidence," and a motion to take depositions. Defendants filed a motion for an extension of time to complete discovery and to file dispositive motions. On April 11, 2016, the court denied plaintiff's motion to extend the number of interrogatories, motion to take depositions, and first motion to return documents. The court also denied plaintiff's motion to file his "Affidavit of Evidence," and directed the clerk of court to strike plaintiff's proposed affidavit and exhibits. The court denied as moot plaintiff's second motion for return of documents. Finally, the court granted defendants' motion for an extension of time and extended the discovery and dispositive motion deadlines.

On May 9, 2016, defendants filed the instant motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. Along with their motion, defendants filed a statement of material facts and an appendix which included the following attachments: personal affidavits from defendants Buchanan and Mobley; defendants' discovery responses; excerpts from North Carolina Department of Public Safety ("DPS") policies and procedures; records from plaintiff's

---

[1] Plaintiff's motion to extend the discovery deadline included requests that the court direct the North Carolina Department of Public Safety to permit him access to a photocopier and for appointment of counsel. While the court granted plaintiff an extension of the discovery deadline, it denied the remaining portions of the motion.

4

disciplinary proceedings; plaintiff's DPS disciplinary history; plaintiff's "Faith Group Affiliation Declaration Form;" DPS administrative remedy grievances and responses; plaintiff's DPS Offender Infraction log; and plaintiff's mail log.  Plaintiff next filed a motion to strike evidence from defendants' statement of material facts, an opposing statement of facts, and an appendix consisting of 889 pages.  Plaintiff also filed a letter on June 24, 2016, stating that he did not receive defendants' memorandum in support of their motion for summary judgment.  On November 21, 2016, the court directed defendants to re-send their memorandum to plaintiff.  Defendants complied with the court's order.  Plaintiff subsequently filed a motion to appoint counsel, which the court denied.

## STATEMENT OF FACTS

Except as otherwise noted below, the undisputed facts are as follows.  Plaintiff's claims relate to the handing of his personal and legal mail at Warren Correctional Institution ("Warren") from December 6, 2013 through October 6, 2014.  (Am. Compl. ¶ 1; Mobley Aff. ¶ 3 ).  While at Warren, plaintiff was classified as an indigent inmate, which is an inmate who does not have funds to pay for postage and other canteen items.  (Buchanan Aff. ¶ 15; Mobley Aff. ¶ 12).  As an indigent inmate, plaintiff was permitted to send mail at Warren despite his lack of funds.  (Buchanan Aff. ¶ 10 and Mobley Aff. ¶ 12).  In particular, as an indigent inmate, plaintiff was provided 10 postage stamps per month, and could send unlimited legal mail.  (Buchanan Aff. ¶ 10; DPS Policies and Procedures Chpt. D § .0308(a)(2) ("Postage for personal mail from indigent inmates shall be limited to the cost of 10 first class one ounce letters per month per indigent inmate.  Postage for personal mail from inmates without funds will be paid using the Inmate Welfare Fund provided the inmate meets the requirements of being indigent. . . .")).   The policies governing inmate mail at Warren, however, do not limit the amount of legal mail that can be sent by indigent inmates.  See DPS

5

Policies and Procedures Chpt. F § .0503(14) ("Each facility will be responsible for making provisions to allow inmates, including those on Control Status, to mail his/her mail, if the inmate can demonstrate that additional stamps are required."); Chpt. D § 0308(b) ("The 10 letter limitation on personal mail for indigent inmates does not apply to legal mail."); Buchanan Aff. ¶ 11.

In addition to the DPS policies and procedures governing indigent mail, there are policies and procedures applicable to all inmate mail. For instance, inmates are permitted to possess 25 postage stamps at a time, and any inmate found in possession of more than 25 stamps is subject to disciplinary action. DPS Policies and Procedures, Chpt. F § .0503(14). DPS policy further provides that prison officials may confiscate any stamps an inmate possesses in excess of the 25 stamp limit, and any confiscated stamps are held pending the disciplinary proceedings for possessing excess postage. Id. If an inmate subsequently is found guilty of possessing excess postage, the stamps are transferred into the indigent stamp inventory and not returned to the inmate. Id. DPS policy does not require prisons to provide appeal notices for mail confiscated or otherwise interrupted for postage violations.[2] (Buchanan Aff. ¶ 29). In addition to the policies limiting the number of stamps an inmate may possess, DPS policy prohibits inmates from engaging in mail-related bartering and trading. DPS Policies and Procedures, Chpt. B § .0301(h).

Plaintiff was charged with a series of disciplinary proceedings arising out of mail-related policy violations. The first proceeding commenced on August 15, 2013, when plaintiff was charged with a C-11 disciplinary offense for the misuse of the mail. (Buchanan Aff. Ex. E p. 67; DPS Policies and Procedures, Chpt. B, §.0202(a)). On September 10, 2013, the disciplinary hearing

---

[2] Appeal notices, however, are required for mail that is censored and interrupted due to its content. (Buchanan Aff. ¶ 29).

6

officer ("DHO") conducted a hearing on the charge, and set forth the following summary of the record:

> Nathaniel Buchanan, processing assistant assigned to the mailroom, reports that on 8/9/13 at approximately 0845 he observed a letter from inmate William Carawan addressed as "legal mail" to the law office of Allen Ellis, PC James Publishing Inc., PO Box 25205 Santa Ana, CA. The mailing address for the attached letter to the law office of Allen Ellis does not match that on the internet but is to a James Publishing Company. Inmate Carawan was charged with a C11 the DHO advised inmate of his right in the appeal and disciplinary process; during the hearing inmate pled not guilty to the charge of a C11. Inmate did request a written statement from the investigating office[r], the DHO asked why inmate Carawan stated he did not need it. The DHO asked inmate did he need live witness? Inmate's reply was no. Inmate alleges that under jail house lawyer handbook, provides this address to contact an attorney. He was unaware it was a publication company. The DHO read all the evidence included in the disciplinary package and all the evidence included, therefore based on the reporting party's statement and the information gathered by the investigating officer inmate Carawan is found guilty of the C11. . . .

(Buchanan Aff. Ex. E, p. 63). The DHO sentenced plaintiff to 20 days of segregation, 10 days loss of good-time credit, 20 hours of extra duty, 60 days suspension of privileges, and two months limited draw. (Id. p. 61).

Later in August 2013, plaintiff was charged with two additional C-11 disciplinary offenses for misuse of the mail on August 14 and 16, 2013. (Id. Ex. F, pp. 91, 105). Specifically, on both August 14 and 16, 2013, mail room staff discovered mail upon which plaintiff had altered the "Mailed from Warren Correctional" stamp. (Id. Ex. F, pp. 82, 105). On September 10, 2013, plaintiff pleaded guilty to both of the August 2013, C-11 offenses, and was sentenced, for each offense, to 15 days of segregation, 30 days suspension of privileges, and one month of limited draw. (Id. Ex F, pp. 84, 107).

7

On December 5, 2013, Warren mail room staff received mail from plaintiff which exceeded the limit of mail permitted for indigent inmates and the number of postage stamps allowed to be possessed by any inmate. (Id. ¶ 20 and Ex. G, p. 119). Specifically, on the date at issue, the mailroom at Warren received from plaintiff 30 pre-stamped envelopes and three envelopes with "forever" stamps. (Id.) The December C-11 charge, however, ultimately was dismissed because it appeared that some of the letters had been picked up by officers at different times. (Id. ¶ 20; Ex. G, p. 119). Accordingly, prison officials could not determine whether the postage limits were violated. (Id.)

In January 2014, plaintiff was charged with four additional mail-related disciplinary infractions for misuse of the mail on January 17, 2014. (Buchanan Aff. Ex. H, p. 159). Plaintiff incurred his first two charges–a C-9 for bartering or trading and a C-15 for possessing stamps in excess–after Warren's mail room staff received 53 stamped envelopes from plaintiff between the dates of January 6, 2014, and January 17, 2014. (Buchanan Aff. Ex. H, p. 155). As a defense, plaintiff contends that he was not engaging in bartering, but that he was the recipient of charitable gifts from Muslim inmates engaging in the practice of zakat which involves charitable acts.[3] (Am. Compl. ¶¶ 3, 6). The DHO conducted a hearing for theses charges on March 6, 2014, and set forth the following summary of the record:

> Mr. Buchanan states that on 01/17/14 at 1215 HRS he received 53 stamped envelopes from [plaintiff] to b[e] mailed between the dates of 01/06/14 thru 01/17/14. Mr. Buchanan states these envelopes are the ICON pre-stamped envelopes purchase[d] from the canteen. [Plaintiff] is indigent and canteen records show he has not purchased stamped envelopes. . . .

---

[3] The court notes that on November 19, 2013, plaintiff submitted a request to Warren staff that his declared faith group be changed from Islam to Buddhism. (Mobley Aff. ¶ 20). Then on April 30, 2014, plaintiff submitted a request to Warren staff that his religious faith group be changed back to Islam. (Id. ¶ 20).

> LT Mayes states that [plaintiff] sent out 53 in 11 days, and [plaintiff]
> is a indigent inmate only allowed 10 pieces of mail a [] month.
> Inmate alleges he received the other stamps from his brothers in the
> block as charity.

(Buchanan Aff. Ex. H, p. 155). Based upon the foregoing, the DHO found plaintiff guilty of the

charged offenses and sentenced plaintiff to 15 days of segregation, 10 days loss of good-time credit,

30 days suspension of privileges, and one month limited draw for his disciplinary convictions. (Id.

p. 153).

Plaintiff's remaining two January 2014 C-9 and C-15 disciplinary charges arose out of a

January 17, 2014, search of plaintiff's cell and discovery of 54 additional stamped envelopes. (Id.

p. 194). The DHO conducted a hearing for these charges on February 11, 2014, and set forth the

following summary of the record:

> On 1/17/14 at about 0901 Officer Schankweiler stated he searched
> [plaintiff's] cell and found 54 stamped envelopes and inmate is
> in[d]igent and can[']t purchase these items. [P]laintiff is charged
> with a C09 and C15. . . . During the hearing inmate plead not guilty
> to the C09 and guilty to the C15. Inmate did request written witness
> statements, inmate did not describe what type of physical evidence.
> Inmate states that he was given the envelopes by other inmates.
> Inmate states there is no where in policy that states he can not mail
> the amount of mail that he is. Inmate also states he should receive 25
> stamped envelopes back per policy. However it should be noted that
> [plaintiff] is indigent and receives 10 stamps from the mail room a
> month.

(Id., p. 196). Based upon the foregoing, the DHO found plaintiff guilty of the C-09 disciplinary

charge. (Buchanan Aff. Ex. E, p. 155). For his C-09 conviction, the DHO sentenced plaintiff to 30

days of segregation, 60 days suspension of privileges, and two months limited draw for his

disciplinary convictions. (Id. p. 194). For the C-15 conviction, the DHO sentenced plaintiff to 15

days segregation, 30 days suspension of canteen privileges, and one month limited draw. (Id. at 197).

Finally, plaintiff was charged with a C-11 disciplinary offense for the misuse of mail for an incident occurring on March 31, 2014. (Id. Ex. I, p. 212). Specifically, on that date, Warren mail room staff received five letters from inmate Tony Lancaster to be mailed out. (Id. p. 211). Defendant Buchanan noticed that the letters were "bulky, stiff[,] and inflexible." (Id.) As a result, defendant Buchanan obtained authorization from defendant Mobley to open the letters. (Id.) Defendant Buchanan discovered that each of the envelopes from inmate Lancaster contained envelopes from plaintiff. (Id.) Plaintiff subsequently pleaded guilty to the C-11 offense and was sentenced to 15 days segregation, 10 days loss of good-time credit, 20 hours of extra duty, 30 days suspension of privileges, and one month limited draw. (Id. p. 212).

Despite his many mail-related disciplinary charges and conviction, plaintiff never was prohibited from sending mail while incarcerated at Warren. (Buchanan Aff. ¶ 26 and Ex. J; Mobley Aff. ¶ 16). Defendants Buchanan and Mobley attest that plaintiff's mail was interrupted only when staff suspected that it was in violation of policy. (Id.) Legal mail, particularly, was not interrupted, even if Warren staff suspected that it was being sent in violation of policy. (Id.) Although excess postage or pre-stamped envelopes, which violated policy, were not returned to plaintiff, any non-contraband letters confiscated during the course of the above-stated disciplinary proceedings ultimately were returned to plaintiff. (Buchanan Aff. ¶ 27 and Mobley Aff. ¶ 17). Plaintiff was transferred from Warren in October 2014. (Id. ¶ 3).

10

## DISCUSSION

### A. Motion to Strike

Plaintiff requests that the court strike "the evidence claimed for defendants' Statement of Material Fact in Support of Defendants' Motion for Summary Judgment." (DE 108, p. 1). Plaintiff asserts that defendants are not in compliance with Local Rule of Civil Procedure 56.1 because "no Exhibit named has been identified by paragraph or line in accordance with the rule[.]" (Id.) The exhibits contained in defendants' appendix to their motion for summary judgment are labeled. Thus, plaintiff's motion to strike is DENIED.

### B. Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

11

2.    Analysis

Defendants assert the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

a.    Religion Claims

Plaintiff asserts that defendants violated his rights pursuant to RLUIPA and the Free Exercise Clause of the First Amendment by confiscating or interfering with plaintiff's mail which contained postage stamps donated to plaintiff by Muslim inmates practicing zakat.  Beginning with RLUIPA, RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion.  See 42 U.S.C. § 2000cc-2(b).  The statute defines

12

"religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n. 8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); Ozmint, 578 F.3d at 252 (quotations omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190); see Holt v. Hobbs, __ U.S. __, 135 S. Ct. 853, 866 (2015).

As for the First Amendment, the Free Exercise Clause states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment.

13

See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is reasonably related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

The court first determines, for the purposes of both RLUIPA and the First Amendment, whether DPS's prohibition on bartering and/or trading substantially burdened plaintiff's ability to practice Islam. In conducting a "substantial burden" analysis, a court should not judge the significance of a particular belief or practice to the religion at issue. Cutter, 544 U.S. at 725 n. 13; Lovelace, 472 F.3d at 187 n. 2. Rather, a plaintiff must demonstrate that a governmental entity substantially pressured him to modify his behavior and to violate his religious beliefs in order to demonstrate that his religious practice has been substantially burdened. See Lovelace, 472 F.3d at 187. A plaintiff, however, is not required, as part of this prima facie showing, to prove that the exercise at issue is required by or essential to his religion. See Cutter, 544 U.S. at 725 n. 13.

Here, plaintiff has not presented any evidence to demonstrate that DPS's policy prohibiting inmates from bartering or trading property interfered with the practice of his religion. Importantly, plaintiff does not allege how he, himself, was prevented from practicing in his Muslim faith.[4] Plaintiff's claim, instead, focuses on the fact that he was not able to be the recipient of other

---

[4] Notably, during the relevant time period, plaintiff's DPS faith declaration form listed his religious preference as Buddhism and not Islam. (Mobley Aff. ¶ 20).

14

inmates' religious practice of zakat. As a result, any potential RLUIPA or First Amendment claim would be on behalf of the inmate engaging in the charitable act of zakat, and not the recipient. Plaintiff does not have standing to assert a RLUIPA or First Amendment claim on behalf of another inmate in connection with that inmate's religious practice. See Inmates v. Owens, 561 F.2d 560, 562–63 (4th Cir. 1977) (finding that one pro se inmate does not have standing to sue on behalf of another inmate); see also Myers v. Loudon Co. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005) (finding that a pro se person's right to litigate for oneself does not create a similar right to litigate on behalf of others).

Even if plaintiff had standing to bring this claim, he has provided no evidence, aside from his unreasoned say-so, to establish that he was substantially pressured to modify his behavior or to violate his religious beliefs. See Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012) ("Because Krieger did not show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs, the district court correctly determined that Krieger failed to establish a prima facie case under RLUIPA."); DeSimone v. Bartow, 355 F. App'x 44, 46 (7th Cir. 2009) (noting the insufficiency of a plaintiff's unreasoned say-so to create a triable issue) (internal quotation omitted). Based upon the foregoing, plaintiff failed to establish the DPS policy at issue substantially burdened his practice of his Muslim faith. Accordingly, plaintiff is unable to establish a RLUIPA or First Amendment violation, and defendants are entitled to qualified immunity for this claim.[5]

---

[5] To the extent plaintiff alleges in his amended complaint that defendant Mayes confiscated all of his property including his religious books in violation of the First Amendment, (See DE 41, ¶ 4), plaintiff fails to establish a constitutional violation. Specifically, plaintiff has not alleged or provided any evidence to establish how the confiscation of his unspecified "religious books" substantially burdened his religion. Thus, this claim is DISMISSED without prejudice. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989); DeSimone, 355 F. App'x at 46. The court further notes that plaintiff currently is litigating two actions relating to the practice of Islam. See Carawan v. Solomon, No.

b.        Remaining First Amendment Claims

        Plaintiff alleges numerous instances of which defendants interrupted or confiscated both his

personal and legal mail which he contends infringed upon his First Amendment right to petition the

government and access to the courts.   Generally, inmates have a First Amendment right to

communicate with others outside of the of prison.   See Thornburgh v. Abbott, 490 U.S. 401, 407

(1989); Heyer v. Boyd, ___ F.3d ___, 2017 WL 715823, *22 (4th Cir. 2017).   However, prison

officials may adopt regulations that impinge on an inmate's constitutional rights if those regulations

are "reasonably related to legitimate penological interests."   Turner, 482 U.S. at 89; Altizer v.

Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999) (holding that "the opening and inspecting of an

inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore,

constitutional . . . .").   Moreover, in noting the delicate nature of prison management, the Supreme

Court has "afforded considerable deference to the determinations of prison administrators who, in

the interest of security, regulate the relations between prisoners and the outside world." Thornburgh,

490 U.S. at 408 (citation omitted).

---

5:16-CT-3226-FL (E.D.N.C.) and Carawan v. Perritt, No. 5:16-CT-3228-FL (E.D.N.C.).

1. Personal Mail

The court begins with plaintiff's challenge to DPS's policies providing that indigent inmates may send 10 letters per month and that all inmates may possess only 25 stamps at one time for personal mail.[6] DPS implemented the policies restricting outgoing personal mail because inmate personal mail poses a security risk due to the fact that it provides a vehicle for inmates to send or receive contraband, as well as to plan or engage in criminal activities with other inmates as well as the public. (Buchanan Aff. ¶ 5 and Mobley Aff. ¶ 7). In light of the security risks involved, the policies at issue are constitutional. Altizer, 191 F.3d at 548; Hummer v. Dalton, 657 F.2d 621, 629 (4th Cir. 1981) ("A limitation of ten items per week on "legal" mail is not so restrictive that it will support a legally cognizable claim of denial of access to the courts. The failure to provide free postage for communications to the news media is not an unreasonable denial of the mailing privilege.").

The record, additionally, reflects that plaintiff was permitted to send a large volume of mail during the relevant time period despite DPS's mail policies, and that only mail suspected of being in violation of policy was interrupted in order to be investigated. (Buchanan Aff. ¶ 26 and Ex. J; Mobley Aff. ¶ 16). At all times, plaintiff had the opportunity to choose whether he used his indigent stamps for legal or personal mail, within DPS's policy guidelines. See Johnson v. North Carolina, No. 4:14-CV-50-FL, 2015 WL 413607, at *7 (E.D.N.C. Jan. 30, 2015) ("[W]ith respect to plaintiff's claim that he was denied the opportunity to communicate with his father, prisoners do not have unlimited access to communications with the outside world."), aff'd, No. 16-1538, 2016 WL 4434465 (4th Cir. Aug. 22, 2016). Plaintiff's conclusory allegations regarding the interference or

---

[6] The DPS policies at issue do not apply to legal mail. DPS Chpt. D § .0308(b); (Buchanan Aff. ¶ 11).

tampering with his personal mail are insufficient to establish a constitutional claim. Couch v. Jabe, No. 7:11-cv-34, 2012 WL 3043105, at *8 (W.D. Va. July 25, 2012) ("Plaintiff fails to establish any defendant's malicious intent to keep plaintiff from communicating with the public, and his mere conclusions of a proximate injury and a defendant's bad faith in keeping the Contract from him for eighteen months are insufficient to afford relief.") (internal quotations omitted). Thus, plaintiff has not established a First Amendment violation with respect to the alleged tampering with his personal mail, and defendants are entitled to qualified immunity for this claim.

To the extent plaintiff alleges that the DPS's policy prohibiting bartering interfered with his ability to send personal mail, this claim too is without merit. DPS's prohibition on bartering or trading items, such as stamps, furthers security interests. (Buchanan Aff. ¶ 5 and Mobley Aff. ¶ 7); see Henderson v. Commonwealth of Virginia, No. 7:07-cv-00266, 2008 WL 792171, at * 3 (W.D. Va. Mar. 25, 2008) ("It does not defy reason to conclude that the possession and exchange of items that are considered valuable can potentially result in thefts, assaults, and other disruptive activities by inmates that threaten the security and safety of inmates and staff."); Raper v. Adams, No. 5:06-CT-41-D, 2007 WL 3532344, at *2 (E.D.N.C. Mar. 28, 2007) ("Giving inmates an incentive to barter would create a ripple effect and adversely affect security by draining scarce prison resources."), aff'd, 238 F. App'x 964 (4th Cir. 2007). Based upon the foregoing, plaintiff failed to establish a First Amendment violation, and defendants are entitled to qualified immunity for this claim.

To the extent plaintiff contends that DPS's mail-related policies interfered with his ability to communicate with the press, plaintiff again fails to establish a First Amendment claim. As stated, plaintiff maintained the ability to send personal mail while at Warren–subject to the above-stated

18

mail policies. (Buchanan Aff. ¶ 26; Mobley Aff. ¶ 16). Plaintiff generally references several dates on which he claims Warren staff prevented him from mailing personal letters to the media. (See Am. Compl.). Plaintiff, however, provides no evidence to support his allegations and does not disclose the identity of any media-related addressee or content of the alleged missing letters. This is insufficient to establish a constitutional violation. See White, 886 F.2d at 723 (finding *pro se* complaints require a minimum level of factual support.). Thus, defendants are entitled to qualified immunity for this claim.

2.      Legal Mail

Plaintiff alleges that numerous unspecified items of legal mail were confiscated or blocked at Warren. An inmate has a constitutional right to access the court under the First Amendment. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The Supreme Court held in Lewis that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "litigate effectively once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise).

19

Plaintiff, in this case, failed to allege any injury for the alleged mishandling of his legal mail. In fact, the record reflects that plaintiff's ability to litigate this action has not been impeded by the prison's mail handling in that there are 119 docket entries in this action. Plaintiff, additionally, has filed seven actions in this district and currently is actively litigating five of those seven actions.[7] Moreover, any isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (finding isolated incidents of opening of legal mail does not state a cognizable § 1983 claim). Thus, plaintiff cannot establish a constitutional violation on this ground, and defendants are entitled to qualified immunity for this claim.

### c. Fourteenth Amendment Claims

Plaintiff brings several mail-related claims pursuant to the Due Process Clause which include: the loss, confiscation, or stealing of mail; interference with the administrative remedy process, challenges to his disciplinary proceedings, and failure to provide appeal notices for rejected pieces of mail. The court now will address plaintiff's due process claims in turn.

---

[7] A complete list of the actions plaintiff filed in this district include the following: Carawan v. Daniels, No. 13-CT-3108-BO (E.D.N.C. closed July 24, 2015); Carawan v. Kornegay, No. 5:13-CT-3244-F (E.D.N.C. closed July 7, 2014); Carawan v. McLarty, No. 5:14-CT-3079-FL (E.D.N.C. opened Mar. 26, 2014); Carawan v. Solomon, No. 5:16-CT-3226-FL (E.D.N.C. Sept. 7, 2016); Carawan v. Perritt, No. 5:16-CT-3228-FL (E.D.N.C. filed Sept. 7, 2016); Carawan v. Perritt, No. 5:16-CT-3244-F (E.D.N.C. filed Sept. 19, 2016); and Carawan v. Solomon, No. 5:16-CT-3269-F (E.D.N.C. filed Oct. 17, 2016).

1.     Loss, Confiscation, or Stealing

Plaintiff contends that defendants lost or stole his mail in violation of the Due Process Clause of the Fourteenth Amendment.  To state a procedural or substantive due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action.  Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).

Beginning with plaintiff's procedural due process claim, he is not entitled to relief because even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property by State employees do not violate due process until and unless the State refuses to provide a suitable post-deprivation remedy); see Mora v. City of Gaithersburg, 519 F.3d 216, 230-31 (4th Cir. 2008).  Here, an adequate post-deprivation remedy is available to plaintiff in state court.  See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6-7 (4th Cir. 1983).  Thus, plaintiff fails to establish a procedural due process claim.

As for substantive due process, the Fourth Circuit defines substantive due process as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions."  Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal, Virginia, 135 F.3d 275, 287-88 (4th Cir. 1998) (internal quotation omitted).  The substantive due process check "is warranted only where no process could cure the deficiencies in the governmental action . . . In other words, governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it."  Id.

21

In this case, the court does not find the alleged deprivation so unjust as to be incapable of avoidance by any procedural protections. Moreover, post-deprivation state remedies are available to plaintiff. Thus, plaintiff has not established a substantive due process violation. See Williams v. Crawford, 449 F. App'x 288, 289 (4th Cir. 2011) ("Because Williams had an adequate post-deprivation remedy under Virginia law for the allegedly wrongful confiscation, his property was not taken without due process."); see also, Calhoun-El v. Maynard, No. RDB-07-220, 2007 WL 5254010, at *n.9 (D. Md. Nov. 19, 2007) ("Further, allegations that a state actor has negligently or intentionally destroyed, lost, or interfered with legal mail or other personal property do not state a procedural due process claim where effective state remedies are available.") (citing Pink v. Lester, 52 F.3d 73 (4th Cir. 1995)), aff'd, 267 F. App'x 252 (4th Cir. Feb. 27, 2008). Because plaintiff fails to state a due process claim in connection with his alleged lost or stolen mail, defendants are entitled to qualified immunity.[8]

2.      Interference with Administrative Remedy Proceedings

Plaintiff asserts that defendants violated his rights pursuant to the Due Process Clause because they interfered with his ability to participate in Warren's administrative remedy procedure. Generally, inmates do not have a constitutional right to have available or to participate in an effective grievance process. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also, Oliver v. Myers, No. 5:7:08-CV-558, 2008 WL 5212409, at *4 (W.D. Va. Dec. 12, 2008) (stating that

---

[8]   To the extent plaintiff alleges a violation of the Fifth Amendment (applicable to the states through the Fourteenth Amendment) Just Compensation Clause, his claim is without merit. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985); see Sorrentino v. Godinez, 777 F.3d 410, 413 (7th Cir. 2015). As stated above, there are adequate remedies available in state court, and plaintiff fails to establish a constitutional claim.

"because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts") (citation omitted), appeal dismissed, 335 F. App'x 317 (4th Cir. 2009). Further, even if available, a prison grievance procedure does not confer any substantive right upon inmates. Adams, 40 F.3d at 75. Thus, plaintiff cannot establish a due process violation, and defendants are entitled to qualified immunity for this claim.

3.     Disciplinary Proceedings

Plaintiff contends that he was denied due process in his disciplinary proceedings. The Due Process Clause mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of protected liberty interest, such as earned good-time credit. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). These limited due process rights include advanced, written notice of the charges, written findings, and a limited right to call witnesses. See id. at 563-64. However, an inmate only is entitled to these procedural protections when the conviction results in the loss of statutory good-time credits or where some other liberty or property interest is at issue. Id. Additionally, the findings of a prison disciplinary board must be supported by some evidence in the record, Walpole v. Hill, 472 U.S. 445, 454-55 (1985), and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

To begin, plaintiff received disciplinary charges for mail-related policy violations occurring on August 9, 14, and 16, 2013, December 5, 2013, January 17, 2014, and March 31, 2014. Plaintiff's December 5, 2013, disciplinary charge ultimately was dismissed and, therefore, did not result in the loss of good-time credit. Plaintiff likewise did not lose any good-time credit in connection with his August 14 and 16, 2013, conduct or two of the four charges he received for his

23

January 17, 2014, conduct. Accordingly, plaintiff failed to establish a due process violation arising out of his December 5, 2013 charge, his August 14 and 16, 2013 convictions, and two of the four convictions he received for his January 17, 2014, conduct.

To the extent plaintiff challenges the fact that any of his disciplinary convictions resulted in his placement on administrative segregation, extra duty, suspension of visitation privileges, or limited draw, such consequences do not implicate a constitutionally protected liberty interest. See Beverati, 120 F.3d at 502 ("confinement to administrative segregation does not implicate a liberty interest"). Thus, plaintiff failed to establish a due process claim on this ground.

As for the remainder of plaintiff's due process challenges, a review of the record reflects that plaintiff was provided written notice of the charges, written findings, and was permitted a limited right to call witnesses. (See Buchanan Aff. Exs. E-I). The record further reflects that each of plaintiff's disciplinary convictions were supported by "some evidence." (Id.) Plaintiff, in turn, has not submitted any relevant evidentiary materials or witnesses testimony to suggest that the DHO's determinations violated his constitutional rights or that he otherwise was denied due process. Rather, plaintiff makes only conclusory allegations in support of his due process claims. Based upon the foregoing, the Due Process Clause was not violated, and defendants are entitled to qualified immunity for these claims.

4.      Appeal Notices

Plaintiff asserts that his due process rights were violated because he was not provided appeal or rejection notices for the items of mail which Warren correctional officers rejected and identified as violating DPS's mail policies. There is a limited right to due process protections when inmate mail is censored based upon its content. See Starr v. Kneirman, 474 F. App'x 785, 786 (1st Cir.

24

2012) (citing <u>Procunier v. Martinez</u>, 416 U.S. 396, 418-419 (1974) <u>overruled on other grounds by</u> <u>Thornburgh</u>, 490 U.S. at 413–14)).  Here, plaintiff's mail was not censored due to content, but was interrupted or rejected due to postage violations.  (<u>See</u> Buchanan Aff. ¶ 29).  Plaintiff further was permitted to challenge the alleged policy violations in the course of his disciplinary proceedings.  (<u>Id.</u> Exs. E-I).  Thus, plaintiff failed to establish a due process violation, and defendants are entitled to qualified immunity for this claim.

On a related note, to the extent plaintiff alleges that any defendant violated a DPS policy, alleged prison policy violations generally do not rise to the level of a constitutional violation. <u>See</u> <u>Jackson v. Sampson</u>, 536 F. App'x 356, 357-358 (4th Cir. 2013); <u>Joyner v. Patterson</u>, No.0:13-2675, 2014 WL 897121, at *4 (D.S.C. Mar. 6, 2014) ("Violations of prison policies alone do not rise to the level of a constitutional deprivation."), <u>aff'd</u>, 579 F. App'x 748 (4th Cir. 2015).  Thus, plaintiff fails to establish a constitutional violation, and defendants are entitled to qualified immunity for this claim.

>    d.    Eighth Amendment

Plaintiff contends that defendants' alleged interference with plaintiff's mail violated the Eighth Amendment to the United States Constitution.  The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned."  <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (1996).  "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials."  <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted).  The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively*

25

sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted).

Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Mere negligence, however, is insufficient to state a constitutional claim. See Shakka, 71 F.3d at 166.

Here, plaintiff has not established that any defendant engaged in any intentional misconduct in connection with the handling of plaintiff's personal or legal mail. Rather, the record reflects that the confiscation or interruption of plaintiff's mail was due to plaintiff's own violations of Warren's mail policies. (See Buchanan Aff. Exs. E-I). At most, defendants acted with negligence with respect to any lost or misplaced items of plaintiff's mail, and negligence is not actionable pursuant to § 1983. See Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). Thus, plaintiff failed to establish an Eighth Amendment violation, and defendants are entitled to qualified immunity for this claim.

e.      Fourth Amendment

Plaintiff alleges that defendants' confiscation and interruption of his mail violated the Fourth Amendment. Generally, inmates do not have any right to privacy under the Fourth Amendment as to any property in their cells. See Hudson, 468 U.S. at 530. Moreover, as stated, DPS's mail policies further security interests, including preventing inmates from engaging in criminal activity,

26

which is reasonably related to legitimate penological interests.  See Altizer, 191 F.3d at 547; United States v. Cook, 457 F. App'x 285, 286 (4th Cir. 2011) ("[T]he investigation and prevention of ongoing illegal inmate activity further the legitimate penological objective of prison security and inmate rehabilitation."); (Buchanan Aff. ¶ 5).  Thus, DPS's limitations on plaintiff's outgoing mail do not violate the Fourth Amendment, and defendants are entitled to qualified immunity for this claim.

f.     Conspiracy

Plaintiff asserts that defendants conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985.  In order to establish a conspiracy, a plaintiff must establish "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right."  Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).  Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element.  See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Here, plaintiff offers only conclusory allegations of conspiracy.  Because plaintiff fails to plausibly allege a "meeting of the minds" between defendants, plaintiff failed to a violation of § 1985.  Thus, defendants are entitled to qualified immunity for this claim.

g.     New Claims

Plaintiff's filings are voluminous, and his response to defendants' motion for summary judgment is 889 pages.  To the extent plaintiff seeks to assert new claims arising in his response to defendants' motion for summary judgment, or any other filing, such claims are not properly before the court because plaintiff has not requested leave of court to amend his complaint pursuant to

27

Federal Rule of Civil Procedure 15(a) to include any new claim. Thus, plaintiff's new claims are DISMISSED without prejudice. See United States v. Jones, No. 87-7313, 1988 WL 21257, at *1 (4th Cir. Mar. 9, 1988) ("Even under liberal rules of interpretation, a court should not be required to amend a complaint sua sponte every time a pleading is filed which arguably raises a new claim."); see also, Crump v. N.C. Dep't of Corr, No. 3:05CV325-02-MU, 2009 WL 2738459, at * 5 (W.D.N.C. Aug. 26, 2009).[9]

## CONCLUSION

For the foregoing reasons, plaintiff's motion to strike (DE 108) is DENIED. Defendants' motion for summary judgment (DE 99) is GRANTED. Plaintiff's First Amendment claim against defendant Mayes is DISMISSED without prejudice. The clerk of court is DIRECTED to close this case. The clerk additionally is DIRECTED to amend the court's caption to change "Officer Hargrove" to Jeffrey Hargrove.

SO ORDERED, this the 2nd day of March, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[9] Plaintiff, in his response to defendants' motion for summary judgment, attempts to re-allege a claims, including an excessive force claim, which he asserted in his October 6, 2014, amended complaint. However, on November 7, 2014, the court determined that the October 6, 2014, filing violated Federal Rule of Civil Procedure 8 and instructed plaintiff to file an amended pleading which complied with Rule 8. The court further instructed plaintiff that the court would consider his amended complaint as the complaint in its entirety. Plaintiff subsequently filed his January 12, 2015, amended complaint, in which he did not assert his excessive force claim. Accordingly, the excessive force claim is not part of this action.

28